**RHODE ISLAND FEDERATION OF TEACHERS, AFL–CIO, et al., Plaintiffs–Appellees,**

v.

**John H. NORBERG, Defendant–Appellee.**

**Appeal of J. Fred LIPKIND et al.**

**No. 79–1558.**

United States Court of Appeals, First Circuit.

Argued May 5, 1980.
Decided Aug. 21, 1980.

See also, 1st Cir., 630 F.2d 855.

William T. Murphy, Providence, R. I., with whom Albert K. Antonio, Sheila Tobie Swan, Murphy, Mullen & Jarret, Providence, R. I., and Robert M. Andersen were on brief, for appellants.

Lynette Labinger, Providence, R. I., with whom Julius C. Michaelson, and Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Providence, R. I., were on brief, for appellees.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

The parents of school–age Rhode Island children appeal denial of their motion to intervene as of right as party defendants in a suit seeking declaratory and injunctive relief against a Rhode Island statute granting a state income tax deduction for expenses incurred in sending children to public and private primary and secondary schools in New England. We affirm the denial of intervention, not on the basis of untimeliness, as held by the district court, but on the grounds that the parents failed to plead a colorable defense to the challenged statute.

On August 22, 1979, a coalition of individuals and labor, civic and educational organizations brought suit pursuant to 42 U.S.C. § 1983 and the first and fourteenth amendments challenging the constitutionality of Rhode Island General Law § 44–30–12(c)(2),[1] as amended, and seeking injunc-

---

1. R.I. Gen. Law § 44–30–12(c)(2) provides:

    (c) Modifications Reducing Federal Adjusted Gross Income.–There shall be subtracted from federal adjusted gross income . . .
    (2) amounts paid to others, not to exceed five hundred ($500) dollars for each dependent in kindergarten through sixth grade and seven hundred ($700) dollars for each dependent in grades seven through twelve inclusive, for tuition, textbooks, and transportation of each dependent attending an elementary or secondary school situated in Rhode Island, Massachusetts, Connecticut, Vermont, New Hampshire, or Maine, wherein a resident of this state may legally fulfill the state's compulsory attendance laws, which is not operated for profit, and which adheres to the provisions of the Civil Rights Act of 1964. As used in this section, "textbooks" shall mean and include books and other instructional materials and equipment used in elementary and secondary schools in teaching only those subjects legally and commonly taught in public elementary and secondary schools in this state and shall not include instructional books and materials used in the teaching of religious tenets, doctrines, or worship, the

tive relief against implementation of the statute by John H. Norberg, Tax Administrator of the State of Rhode Island. The district court granted a temporary restraining order on August 30, 1979. In recognition of the need of the State of Rhode Island to send income tax forms to the printer no later than November 15, 1979, the parties agreed to start discovery immediately, to limit it to ten days and to start the trial on September 18, 1979. The trial was later rescheduled to be the first matter heard following completion of a trial beginning on September 25, 1979. The plaintiffs took depositions on September 11 and 12, 1979. The defendants filed an answer to the original complaint on September 14, 1979.

On September 14, 1979, ten parents of school–age Rhode Island children filed a motion to intervene as of right as party defendants, Fed.R.Civ.P. 24(a)(2).[2] The plaintiffs objected on September 26, 1979, on the grounds that the intervention was not timely and the intervenors were adequately represented by the defendants. The district court denied the motion to intervene two days later:

> While it is true that the applicants filed their motion within four weeks of the complaint and before any extensive discovery was conducted, timeliness is not dependent merely on the calendar, but on all the circumstances at hand. *Chase Manhattan Bank v. Corp. Hotelera de Puerto Rico*, 516 F.2d 1047 (1st Cir. 1975); *[Abbotts Dairies Division of] Fairmont Foods, Inc. v. Butz*, 421 F.Supp. 415 (E.D. Pa.1976) . . . Quite frankly, the Court is worried that if it allows the applicants to intervene, the ensuing delay might result in a severe burden to the defendant. It is on record that if this matter is not resolved by November 1, the processing of income tax forms for the 1979 income tax year will be severely jeopardized.

I feel constrained, therefore, to deny the motion. However, if the applicants can assure the Court that their intervention will not delay the adjudication of this case, this ruling will be reconsidered. A hearing is granted the applicants on Tuesday, October 2, 1979 at 8:30 a. m. prior to the commencement of the trial.

*Rhode Island Federation of Teachers v. Norberg*, Civ. No. 79–0429 (D.R.I. Sept. 29, 1979).

The parents subsequently submitted a memorandum to the court outlining the theories of their case, requesting a ten–day continuance to conduct discovery and informing the court of their intention to call an expert witness who would be available to testify only on October 18 and 19, 1979.

The district court heard argument on the renewed motion to intervene on October 2, 1979, and reaffirmed its earlier denial of the motion:

> Let's leave it this way: I am not going to grant the intervention unless an order can be formulated entirely satisfactory to the plaintiffs and satisfactory with Mr. Norberg, which will keep in full force and effect the restraining order that we now have until such time as this Court renders its opinion on the preliminary hearing that we are about to start this morning. If that can be worked out, fine, if it cannot be worked out, then we'll just carry right on, because if we can't work it out it just means that the resulting harm to the State of Rhode Island will be just too severe. It's for Mr. Norberg to tell me that it will not throw his whole administrative process into utter confusion.

Defendant Norberg informed the Court that such delay would indeed jeopardize the printing of the tax forms. On October 12, 1979, the court denied intervention, but

purpose of which is to inculcate such tenets, doctrines or worship.

2. Fed.R.Civ.P. 24(a)(2) provides:
   (a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the deposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

granted the parents permission to participate as *amici curiae*.

Throughout consideration of the motion to intervene, two problems were of concern to the district court. The first, and the one on which the district court based its decision, was the likelihood that intervention would necessitate the retaking of depositions, initiation of more extensive discovery and the retention of expert witnesses by the plaintiffs, thereby delaying a decision on the merits and disrupting the schedule for the collection of taxes by the State of Rhode Island. We rest our decision on the failure of the parents to state a defense relevant to the challenged statute, also a matter of concern to the district court,[3] but not the basis of its decision. The appellees have urged this alternative ground upon us as a basis for affirmance, and the record below shows consideration of the matter by the district court. *See United States v.*

*American Railway Express Co.*, 265 U.S. 425, 435, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924); *Chapman v. Commissioner*, 618 F.2d 856, 862 (1st Cir. 1980).

We have pursued the legal theory of the parents so far as to find its constitutional footing quite infirm and insufficient to support intervention. The parents offered the following explanation of their defense of the challenged statute:

The position of the intervenors is that any educational system necessarily promotes a system of values. A public educational system, which avoids promoting values based on theistic beliefs, nonetheless promotes a system of values if it proposes that any particular choice, alternative, option, or opinion is superior to or inferior to another. For instance, the mere rejection of traditional concepts of morals, values, and of right and wrong

---

**3.** The transcript of the October 2, 1979 hearing reveals that the district court experienced difficulty in perceiving the relevance of the parents' substantive contentions to a defense of the challenged statute:

THE COURT: Counselor, those are all very beautiful phrases that we have used repeatedly in some of our opinions, some of our decisions. I have at home a lexicon of phrases used in opinions, "all deliberate speed," and all the rest of it. The "chilling effect," that type of thing. We still have to get to the basics of your position, and from what you have told me in your memorandum, what you're going to try to prove through Professor Erickson is nothing more than the public school education is nonreligious; that the value of contemporary public education in Rhode Island is not religiously neutral, and I say be that as it may, I'm asking you to tell me how does that affect the issues in this case which are focused on what's going on in the parochial schools or private schools? Maybe we can do it this way: why don't you submit to me an offer of proof–I'm thinking off the top of my head, I'm not too sure of the value of this, but what would your reaction be, counselors, if we did it this way: if I permit the intervenors to submit an offer of proof, and if I felt that that offer of proof was indeed relevant, that they could answer the question that I have just put forward, then we'd have to give a second thought as to what we are going to do. If I felt it was not relevant I would just reject the offer of proof, saying that even if it had been proved it cannot affect whatever way the Court is going to go in this case, what's your reaction to

that? I don't know the merits of this position, it's just a thought that came to me while I'm on the bench here.

MR. BRODY: We have no objection to that, your Honor.

MR. MICHAELSON: The difficulty with that is that if your Honor accepts the offer of proof then the problem with reference to delay is not solved.

The Court restated its concern later in the hearing:

THE COURT: There is something that escapes me here on this position, and that is, even if we were to accept what you say as true, how does it possibly affect this case?

MR. ANDERSON: Well, I think that would have to be spelled out in a firmer form in proof of fact, your Honor, but basically what we are alleging is this: if in fact secular humanism is a religion, and if in fact it exists in the public school system today, that in and of itself is an establishment of religion, so we have secular humanism in the public school system.

THE COURT: Okay. How does that violate or in any way destroy the prohibition of the First Amendment regarding the establishment of religion?

MR. ANDERSON: Then, your Honor, we have a system with a tax deduction or with a remedial action which would spread the use of government funds for all types of religion on an equal basis.

THE COURT: But that's not this tax statute. It's not an across-the-board tax deduction.

itself constitutes the adoption of a system of values, variously described as situation ethics, relative morality, and secular humanism. . . .

Either the adoption of humanistic, nontheistic moral values by a public educational system, or a purported rejection of any moral values by an educational system is, for purposes of the First Amendment, the establishment of a religion. The great amounts of public funding for public education, when contrasted with the absence of direct support for schools affiliated with theistic religions constitutes an abandonment of the neutrality required by the Constitution in matters of religion. The contrast between direct funding for public education and no direct funding for education affiliated with theistic religions creates an imbalance, which the statute challenged in this action will in part remedy. In making private, sectarian education more affordable by parents who for religious reasons send their children to sectarian schools, the challenged statute restores the neutrality, which has been abandoned by the funding of secular education in such great amounts, and further promotes the constitutionally guaranteed and desired end of free exercise of religion. See generally, Note, "Government Neutrality and Separation of Church and State: Tuition Tax Credits," 92 *Harvard Law Review* 696.

In summary the intervenors' legal theory is that the excessive funding of public education amounts to an advancement of the religion of Secular Humanism in violation of the establishment clause, infringes upon the free exercise rights of the intervenors since there is no concomitant aid to those who seek sectarian education, and is an abandonment of the governmental neutrality towards religion which the First Amendment commands.

The statute challenged in this action is remedial legislation to remedy those defects.

*Memorandum of Intervenor Defendants Summarizing The Theory Of Their Case.*

■ The first amendment provides, in relevant part:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . .

The Supreme Court has carefully defined the meaning of the established clause:

The "establishment of religion" clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, *aid all religions*, or prefer one religion over another.

*Everson v. Board of Education*, 330 U.S. 1, 15, 67 S.Ct. 504, 511, 91 L.Ed. 711 (1947) (emphasis added). *See Committee for Public Education v. Nyquist*, 413 U.S. 756, 782 n.38, 93 S.Ct. 2955, 2970, 37 L.Ed.2d 948 (1973). Consequently, if secular humanism is, in fact, a religion, *see Wisconsin v. Yoder*, 406 U.S. 205, 215–16, 92 S.Ct. 1526, 1533, 32 L.Ed.2d 15 (1972), and if it is taught in Rhode Island's public schools, the remedy is the prohibition of the teaching of secular humanism, not the adoption of state tax deductions which, as appellants appear to concede, would facilitate attending schools that teach other religions. The Rhode Island textbook, transportation and tuition tax deduction statute, whether constitutional or not,[4] cannot remedy a situation which, if the position of the parents is accepted, is unconstitutional.

■ Whether of right or permissive, intervention under Rule 24 is conditioned by the Rule 24(c)[5] requirement that the intervenor state a well–pleaded claim or defense to the action. *Arvida Corp. v. City of Boca Raton*, 59 F.R.D. 316, 320 (S.D.Fla.1973);

---

**4.** The district court subsequently found the statute unconstitutional on first amendment grounds. *Rhode Island Federation of Teachers v. Norberg*, 479 F.Supp. 1364 (D.R.I.1979). An appeal of that decision is now pending in this court.

**5.** Fed.R.Civ.P. 24(c) provides:

*(c) Procedure.* A person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5. The motion shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought. The same procedure shall be fol-

3B *Moore's Federal Practice,* ¶ 24.14 at 24–552 (2d ed. 1969); 7A C. Wright & A. Miller, *Federal Practice and Procedure* § 1914 at 569 (1972). Although the requirement that the intervenors' legal theory have some merit in the case in which they seek to intervene places a burden on intervenors, the burden is justified by the possibility that the intervention will obstruct or delay vindication of the rights of the original parties. *Kentucky Home Mutual Life Ins. Co. v. Duling,* 190 F.2d 797, 803 (6th Cir. 1951); *United States v. 635.76 Acres of Land,* 319 F.Supp. 763, 766 (D.Ark.1970), aff'd, 447 F.2d 1405 (8th Cir. 1971); *Babcock v. Town of Erlanger,* 34 F.Supp. 293, 295 (E.D.Ky.1940). The requirement is of particular pertinence in cases such as this, where, even when we accept the parents' allegation as to the teaching of secular humanism in the Rhode Island public schools as true, *see Kozak v. Wells,* 278 F.2d 104, 109 (8th Cir. 1960), we are unable to perceive in the parents' proffered defense a colorable defense to the statute.

*Affirmed.*

lowed when a statute of the United States gives a right to intervene. When the constitutionality of an act of Congress affecting the public interest is drawn in question in any action to which the United States or an officer, agency, or employee thereof is not a party, the court shall notify the Attorney General of the United States as provided in Title 28, U.S.C. § 2403.