CONSERVATION LAW FOUNDATION OF NEW ENGLAND, INC., et al., Plaintiffs, Appellees,

v.

Robert A. MOSBACHER, et al., Defendants, Appellees.

Associated Fisheries of Maine, et al., Intervenor Defendants, Appellants.

No. 91–2122.

United States Court of Appeals, First Circuit.

Heard March 2, 1992.

Decided June 11, 1992.

Ralph J. Gillis with whom Gillis & Campbell, Hingham, Mass., was on brief, for intervenor defendants, appellants Associated Fisheries of Maine et al.

Peter Shelley with whom Conservation Law Foundation, Boston, Mass., was on brief, for plaintiffs, appellees Conservation Law Foundation and Massachusetts Audubon Soc.

Peter A. Appel, Atty., Dept. of Justice, with whom Barry M. Hartman, Acting Asst. Atty. Gen., Washington, D.C., Wayne A. Budd, U.S. Atty., Judith S. Yogman, Asst. U.S. Atty., Boston, Mass., David C. Shilton, Peter H. Van Tuyn, Attys., Dept. of Justice, Margaret F. Hayes, and Gene S. Martin, Office of General Counsel, Nat. Oceanic & Atmospheric Admin., Washington, D.C., were on brief, for federal defendants, appellees.

Before TORRUELLA, Circuit Judge, CAMPBELL and WEIS,* Senior Circuit Judges.

WEIS, Senior Circuit Judge.

In this appeal, we determine that a regulated group has a sufficient interest to intervene as of right in a suit filed by public interest organizations seeking more extensive regulation by a federal agency. We also conclude that the proposed intervenors' interest would not be adequately represented by the government. Accordingly, we will reverse the district court order denying intervention.

The appellants are seven commercial fishing groups that were refused intervention under Federal Rule of Civil Procedure 24(a). This suit was brought by the plaintiffs Conservation Law Foundation of New England, Inc. and Massachusetts Audubon Society against the Secretary of Commerce, alleging that the Secretary had inappropriately approved a fishery plan submitted under the provisions of the Magnuson Act, 16 U.S.C. §§ 1801–1882. The Foundation[1] sought to have the Secretary develop a new plan that would prohibit overfishing off the coast of New England.

The fishing groups submitted petitions for intervention, but before the Court could rule, the Foundation and the Secretary agreed upon the terms of a consent decree. At a consolidated hearing, the district court denied the fishing groups' requests for intervention and approved the consent decree.

As part of a comprehensive system of conservation, the Magnuson Act established regional councils that have primary responsibility for formulating fishery management plans. Those plans are then forwarded to the Secretary for approval and publication. If a regional council fails to develop a plan or amendment in a reasonable time, or if the Secretary does not approve a proposed plan, the Act authorizes the Secretary to independently prepare a plan or an amendment.

The New England Fishery Management Council formulated the Northeast Multispecies Fisheries Plan in 1985. After some modifications, the Secretary approved the plan in 1987 as an interim rule. In the years following, amendments were added and, in 1991, the Secretary partially approved a fourth amendment.

After approval of the fourth amendment, the Foundation filed the present suit, alleging that the modified plan did not comply with the Act's intent to eliminate overfishing. The Foundation did not ask the Court to invalidate the existing plan, nor determine the content of a new one, but did request an order directing the Secretary to adopt a schedule for developing amendments and submitting proposed regulations.

---

* Of the Third Circuit, sitting by designation.

**1.** For convenience, the plaintiffs will be referred to as the Foundation.

At a hearing on August 28, 1991, the district court found that the fishing groups had an interest in the litigation, but that "those interests [were] adequately represented by.... a governmental agency whose interests and purposes under the law are to protect the very interests that the proposed intervenors seek to protect." The court observed that "every step that has been taken to date has been publicly noticed and participated in by the public and by the proposed intervenors, even to the extent that some of the intervening associations have principals who are members of the council set up to carry out the purposes of the law. They have participated and they are participating in it."

The court denied intervention without prejudice to renewal of the motion should later developments warrant it. The court also approved the consent decree that set a timetable for development of a plan that would eliminate the over-fished condition of cod and yellow-tailed flounder within five years after implementation, and haddock within ten years.

■ The fishing groups have appealed, asserting that the district court erred in denying them intervention. The Foundation argues that the proposed intervenors have no legally cognizable interest and, in any event, are protected by the Secretary. Consistent with his posture in the district court, the Secretary takes no position on the proposed intervention, but maintains that at this stage our review does not extend to the merits of the consent decree.

■ We review the denial of intervention under an abuse of discretion standard. *Caterino v. Barry*, 922 F.2d 37, 40 (1st Cir.1990). However, the district court has less discretion to deny intervention as of right than is appropriate when permissive intervention is sought. Consequently, an appellate court will reverse a district court's determination if it fails to apply the general standard provided by Federal Rule of Civil Procedure 24(a)(2) or if the decision so fails to comport with that standard as to indicate an abuse of discretion. *International Paper Co. v. Town of Jay, Me.*, 887 F.2d 338, 343–44 (1st Cir.1989).

Rule 24(a)(2) allows intervention as of right if an applicant meets four conditions. In *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir.1989), we listed those requirements:

1. The application must be timely (a factor not challenged here);

2. The applicant must claim an interest relating to the property or transaction which is the subject of the action;

3. Disposition of the action may, as a practical matter, impair or impede that applicant's ability to protect the interest; and

4. The applicant must show that the interest will not be adequately represented by existing parties.

An "applicant who fails to meet any one of these requirements cannot intervene." *Id.*

The fishing groups stress two interests that they seek to protect. First, they cite a personal economic and cultural-identity interest primarily based on the millions of dollars invested in commercial vessels, tackle, docks, and processing, storage, and transportation equipment for use in the fishing industry. Second, they point to a more general interest in the rulemaking process, including adoption of regulations under the Magnuson Act.

The district judge commented at the hearing, "I am going to rule that the fishermen do have an interest. That is not disputed here." The Foundation, however, does not agree and argues that the fishing groups' interests are inadequate for intervention.

■ To justify intervention as of right, interests must be "significantly protectable." *Donaldson v. United States*, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). However, because the case law varies substantially between courts, no bright line of demarcation exists.

In general, the Courts of Appeals for the Second, Sixth, Tenth, and D.C. Circuits have adopted a liberal approach to intervention. They view the interest test as a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency

and due process. *Natural Resources Defense Council v. Costle,* 561 F.2d 904, 910–11 (D.C.Cir.1977); *cf. Jansen v. City of Cincinnati,* 904 F.2d 336, 342–44 (6th Cir. 1990); *Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm'n,* 578 F.2d 1341, 1344–45 (10th Cir.1978); *New York Pub. Interest Research Group, Inc. v. Regents of Univ. of State of N.Y.,* 516 F.2d 350 (2d Cir.1975).

Applying more restrictive criteria, the Courts of Appeals for the Fifth, Seventh, Eleventh, and Federal Circuits reject interests that are speculative, indirect, or contingent. *See Manasota–88, Inc. v. Tidwell,* 896 F.2d 1318, 1322 (11th Cir.1990); *American Maritime Transp., Inc. v. United States,* 870 F.2d 1559, 1561 (Fed.Cir.1989); *American Nat'l Bank & Trust Co. v. City of Chicago,* 865 F.2d 144, 147 (7th Cir. 1989); *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 463 (5th Cir.1984).

This Court has not clearly adopted either of those approaches. Instead, we have emphasized that "[t]here is no precise and authoritative definition of the interest required to sustain a right to intervene," while reiterating "that the intervenor's claims must bear a 'sufficiently close relationship' to the dispute between the original litigants" and that "[t]he interest must be direct, not contingent." *Travelers Indem.,* 884 F.2d at 638.

Nonetheless, the lack of a clear standard may not be of great concern. As one treatise comments: "Indeed, it may well be, as some courts have suggested, that this is a question not worth answering." 7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, et al., *Federal Practice and Procedure* § 1908, at 263 (1986).

The differing results in the case law may be explained to some extent by the varied factual situations. The circumstances that exist when individuals litigate private disputes or those governed by state law differ from those where public law disputes affecting federal regulatory programs are at issue. So too, the determination of whether an interest is sufficient for Rule 24(a)(2) purposes is colored to some extent by the third factor—whether disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest.

Three decisions by this Court illustrate some of these points. In *Travelers Indemnity,* the dispute was between private parties over contribution to abate a toxic waste hazard. The applicant for intervention was an insurance carrier. This Court held that because the insurance company had refused to extend coverage, its interest was only contingent and no direct interest was at stake. *Travelers Indem.,* 884 F.2d at 638–39. We pointed out that state law would govern the coverage issue and that state courts were available to adjudicate that question.

In *Moosehead Sanitary Dist. v. S.G. Phillips Corp.,* 610 F.2d 49 (1st Cir.1979), the State of Maine sought to intervene in an action by a local sanitary district against several private contractors for damages stemming from the construction of a sewage treatment plant. Based on its contribution of one fourth of the construction costs, Maine asserted interests as a third-party beneficiary of the parties' contracts and as an ultimate beneficiary under quasi-contract principles. We found the third-party interest claim incidental and too speculative under state law, *id.* at 52–53; however, because the quasi-contract interest was plausible, non-frivolous, and not "wholly unlikely to prevail," we considered the remaining requirements of the intervention test. *Id.* at 53–54. Ultimately, we concluded that this "limited interest" did not justify intervention because Maine was "adequately represented by the existing plaintiff." *Id.* at 54.

In *Flynn v. Hubbard,* 782 F.2d 1084 (1st Cir.1986), a plaintiff asserted various torts against a sole defendant. The defendant did not deny the complaint; instead, two potential joint tortfeasors petitioned to intervene. In a concurring opinion, Judge Coffin noted that the petitioners would not be bound by any judgment and would have a subsequent opportunity to litigate their obligations. Thus, he concluded that they

had no protectable interests that would be impaired by the litigation. *Id.* at 1092–94.

Unlike the Court's previous cases, the one at hand is centered on the procedure provided for implementation of a federal regulatory scheme. The suit is pressed by public interest entities seeking to force an agency to alter its regulations and to do so within a period of time not specified in a statute.

In arguing before the district court against the fishermen's petition for intervention, counsel for the Foundation said: "The [Management] council has been unwilling, in our view, to take the hard measures which will economically constrain the fishing fleet, which will hurt some individual fishermen because of their past—because of their technique in fishing which may be inappropriate or may be inappropriate for the amount of time that they currently want to do it. There is no question that an appropriate plan will cause impacts on the current style of fishing that goes out there, as it has to in order to allow these stocks to recover."

Counsel also noted that fishing fleets have used modern technology to become more efficient and "any rebuilding program would necessarily reduce the current level of effort in some degree." The Foundation concluded that this was a case of first impression and that differences of opinion exist as to the scope of the Secretary's discretion as well as the degree to which the court could compel the agency to take the action the plaintiff requested.

On appeal, the Foundation contends that the consent decree submitted to the district court does not make substantive changes in the management plan, but only requires that Magnuson Act procedures be followed to modify the plan. The fishing groups respond that the consent decree removes the discretion granted to the Secretary by the Act and requires him to take action that is not mandated by the statute.

It requires no penetrating analysis to understand that the fishing groups are quite content with the status quo. However, the consent decree requires action by the Secretary that will change the situation—a development that the fishing groups do not favor.

The circumstances are such that if the Foundation prevails, by its own admission, the fishing groups' economic interests will be substantially affected. These interests are not speculative simply because the explicit terms of the consent decree do not implement those changes, but merely begin the process through which they would come about.

Unlike the situations in *Travelers Indemnity* and *Moosehead Sanitary*, detriment is not contingent on the uncertain outcome of later determinations under state law. Here, the adverse effect is certain. The fishing groups seeking intervention are the real targets of the suit and are the subjects of the regulatory plan. Changes in the rules will affect the proposed intervenors' business, both immediately and in the future. *Cf. United States Nuclear Regulatory Comm'n*, 578 F.2d at 1344 (potential uranium mill licensees had interest in environmentalists' suit to enjoin federal agency from licensing operations until environmental impact statements were prepared); *New York Pub. Interest Research Group*, 516 F.2d at 351–52 (pharmacists had interest in challenge to law prohibiting advertising price of prescription drugs because statute could significantly change conduct of business); *National Wildlife Fed'n v. Hodel*, 661 F.Supp. 473, 474 (E.D.Ky.1987) (coal and mining associations had interest in environmentalists' suit to compel EPA to enforce statute because they were "the object and focus of the [Act's] regulatory and enforcement actions at issue in this suit"); *Sierra Club v. Ruckelshaus*, 602 F.Supp. 892, 896 (N.D.Cal.1984) (petitioner had interest in environmentalists' suit to direct EPA to create regulations under Clean Air Act because, as a mining association, it "will be directly affected by final radionuclide emission standards").

The question before us is not the merits of the consent decree, *see United States v. Oregon*, 913 F.2d 576, 589–90 (9th Cir. 1990); *Walker v. City of Mesquite*, 858

F.2d 1071, 1074 (5th Cir.1988), but whether the fishing groups should have been allowed to intervene in order to adequately present their opposition to it. Absent the consent decree, the Secretary was not bound by any timetable to adopt new amendments, nor, according to the fishing groups, to develop any plan to prevent overfishing by domestic fishermen. Obviously, from their viewpoint, the fishing groups would be best served if they were able to stop the Foundation's proposal before it gets underway.

Weighing the circumstances here, we conclude that the fishing groups have demonstrated both an interest in, and an adverse effect from, the consent decree negotiations by the Foundation.

The final matter for discussion is whether the fishing groups are adequately represented by the Secretary of Commerce. We conclude they are not. The fishing groups are presently regulated by the Secretary and, if the consent decree is ultimately effective, will be subjected to even more stringent rules than those presently in effect.

The Secretary's judgments are necessarily constrained by his view of the public welfare. While the Secretary may well believe that what best serves the public welfare will also best serve the overall interests of fishermen, the fact remains that the fishermen may see their own interest in a different, perhaps more parochial light. For example, a fisherman with a mortgage to pay off on his boat may not want to limit his fishing activities even if the long-term effect of continuing to fish is to put the entire fishing stock at risk.

The Secretary did not file an Answer to the Foundation's complaint, but instead accepted the consent decree which provides for virtually all the relief sought. That is not necessarily an improper action, but it does leave the fishing groups with the distinct feeling that the Secretary is less than wholeheartedly dedicated to opposing the Foundation's aims. That impression is supported by the Secretary's candor in taking no position on the petition for intervention. The Secretary's silence on any intent to defend the fishing groups' special interests is deafening.

In *Moosehead Sanitary*, 610 F.2d at 54, we said that ordinarily petitioners must "demonstrate adversity of interest, collusion or nonfeasance." However, we implied that evidence that parties are "sleeping on their oars" or "settlement talks are underway" may be enough to show inadequacy. *Id.* at 54–55. The Court reached a similar conclusion in *Sanguine, Ltd. v. United States Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir.1984), when it found the government's failure to file a responsive pleading and its agreement to a consent decree 33 days after the suit was filed sufficient to prove inadequate representation. As said, we do not suggest that the government's inaction here is improper, but it is an approach that, from the fishermen's narrower standpoint, may well appear unsatisfactory.

An intervenor need only show that representation may be inadequate, not that it is inadequate. *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 636 n. 10, 30 L.Ed.2d 686 (1972). In *Costle*, 561 F.2d at 912, the Court noted the differing scope of interests that regulatory agencies and regulated industries have in the implementation and oversight of a settlement agreement. Noting that a general agreement that "regulations should be lawful does not necessarily ensure agreement in all particular respects," the Court commented that the intervenors' interests in protecting their industries were more narrowly focused than the governmental agency's interest in implementing the law. *Id.*

In *Costle*, differences about a timetable posed the clear possibility of disparate interests. The Court concluded that governmental representation was not adequate in those circumstances. *Id.* at 912–13.

As the opinion in *Dimond v. District of Columbia*, 792 F.2d 179, 192–93 (D.C.Cir. 1986), pointed out, a governmental entity charged by law with representing the public interest of its citizens might shirk its duty were it to advance the narrower interest of a private entity. In that instance, the agency might find itself in a conflict of

interest. See *National Farm Lines v. Interstate Commerce Comm'n,* 564 F.2d 381, 384 (10th Cir.1977), where the Court concluded that an agency seeking to protect both the public interest and the interest of a private intervenor undertakes a "task which is on its face impossible." *See also New York Pub. Interest Research Group,* 516 F.2d at 351–52.

We realize that in other cases some courts have found representation by a public agency to be adequate. Here, however, the interests of the Secretary and the proposed intervenors do not appear to justify such a conclusion. The circumstances are such that, viewed objectively, it is unlikely that the fishing groups' interests, as those interests are perceived and understood by them, would or perhaps even should be adequately protected by the Secretary. Accordingly, we conclude that in this instance governmental representation is not adequate.

In sum, in viewing all the circumstances, we conclude that the district court's order was not consistent with a proper exercise of discretion and that the petitioner should have been permitted to intervene. The order denying intervention will be vacated and the case will be remanded to the district court for further proceedings in accordance with this opinion.