**PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, North Atlantic Energy Corporation, Northeast Utilities, and Northeast Utilities Service Company, Plaintiffs,**

v.

**Douglas L. PATCH, Chairman of the Public Utilities Commission of the State of New Hampshire, Bruce L. Ellsworth, Commissioner of the Public Utilities Commission of the State of New Hampshire, and Susan S. Geiger, Commissioner of the Public Utilities Commission of the State of New Hampshire, Defendants.**

**Civil Action Nos. 97–97–JD, 97–121L.**

United States District Court,
D. New Hampshire.

June 12, 1997.

See also 962 F.Supp. 222.

Jeffrey S. Cohen, Sulloway, Hollis & Soden, Concord, NH, John B. Nolan, Allan B. Taylor, James J. Tancredi, Day, Berry & Howard, Hartford, CT, Bruce Gladstone, Cameron & Mittleman, Providence, RI, for Plaintiffs.

Steven M. Houran, Acting Attorney General, Wynn Arnold, Assistant Attorney General, Stephen J. Judge, Associate Attorney General, Attorney's General's Office, Concord, NH, Steven W. Phillips, James K. Brown, Special Counsel, Foley, Hoag & Eliot, Boston, MA, for Defendants.

Charles G. Douglas, III, C. Kevin Leonard, Douglas, Robinson, Leonard & Garvey, P.C.,

Concord, NH, Terrance A. Corrigan, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Cabletron Systems, Inc.

James R.M. Anderson, Michael W. Holmes, Office of Consumer Advocate, Concord, NH, for Office of the Consumer Advocate of the State of New Hampshire.

Mark W. Dean, Dean, Rice & Howard, Manchester, NH, for New Hampshire Electric Cooperative, Inc.

Joshua L. Gordon, Concord, NH, for Campaign for Ratepayers Rights.

F. Anne Ross, Concord, NH, for Retail Merchants Association.

John J. Ryan, Casassa and Ryan, Hampton, NH, for Community Action Programs of the State of New Hampshire.

Carlos A. Gavilondo, Westborough, MA, for Granite State Electric Company.

David A. Garfunkel, Gallagher, Callahan & Gartrell, Concord, NH, for Granite State Electric Company.

Peter H. Grills, David E. Crawford, O'Neill, Grills, & O'Neill, P.L.L.P., St. Paul, MN, for City of Manchester.

Thomas Arnold, III, Assistant City Solicitor, Manchester, NH, for City of Manchester.

Paul K. Connolly, Jr., H. Glenn Alberich, Scott J. Mueller, Damian R. LaPlaca, LeBoeuf, Lamb, Greene & MacRae, L.L.P., Boston, MA, for Unitil Corporation, Concord Electric Company, Exeter & Hampton Electric Company and Until Power Corp.

Jacqueline Lake Killgore, Public Utility Policy Institute, Concord, NH, for Unitil Corporation, Concord, Electric Company, Exeter & Hampton Electric Company and Until Power Corp.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.*

In this litigation, Public Service Company of New Hampshire ("PSNH"), North Atlantic Energy Corporation ("NAEC"), Northeast Utilities ("NU"), and Northeast Utilities Service Company ("NUSC") (collectively, "plaintiffs") challenge the validity of the Final Plan for restructuring New Hampshire's electric utility industry ("Final Plan" or "Plan"), issued by the Public Utilities Commission of the State of New Hampshire ("Commission") on February 28, 1997. As outlined in this Court's Opinion and Order of April 28, 1997, *Public Service Co. v. Patch,* 962 F.Supp. 222, 228–29 (D.N.H.1997), plaintiffs contend, *inter alia,* that the Final Plan is preempted by federal law, attempts to assert state power beyond the limits allowed by the commerce clause, and results in an impairment of contractual rights and a physical and regulatory taking of property in violation of certain federal and state constitutional provisions.

Presently before the Court are nine motions to intervene in this litigation pursuant to Rule 24 of the Federal Rules of Civil Procedure. The applicants for intervention are: Cabletron Systems, Inc. ("Cabletron"); Office of the Consumer Advocate of the State of New Hampshire ("OCA"); the City of Manchester, New Hampshire ("Manchester"); Campaign for Ratepayers Rights ("CRR"); Retail Merchants Association of New Hampshire ("RMA"); Community Action Programs of New Hampshire ("CAPS"); New Hampshire Electric Cooperative ("NHEC"); Granite State Electric Company ("Granite State"); and Unitil Corporation, Concord Electric Company, Exeter & Hampton Electric Company, and Unitil Power Corporation (collectively, "Unitil").

For the reasons that follow, the motions of NHEC, Granite State, and Unitil are granted, and the motions of Cabletron, OCA, Manchester, CRR, RMA, and CAPS are denied.

### I. Background

The Court's Opinion and Order of April 28, 1997 provides an extensive review of the facts and circumstances that give rise to the present dispute between PSNH and the Commission, including an overview of the challenged provisions of the Final Plan. *See Public Service Co.,* 962 F.Supp. at 224–28. There is no need to duplicate those efforts here. Thus, for the purposes of this analysis, the Court needs only to supplement its earlier writing with a short discussion of how

---

* Chief Judge of the District of Rhode Island, sitting by designation.

each of the applicants for intervention is related to, or might be affected by, the original litigation between PSNH and the Commission concerning the Final Plan.

The applicants in this case can easily be grouped into two categories: ratepayers (or interest groups advocating on behalf of ratepayers) and utilities. First, six of the applicants—Cabletron, OCA, Manchester, CRR, RMA, and CAPS (collectively, "the Consumer applicants")—are either electricity ratepayers, consumer advocacy groups, or nonprofit associations representing various ratepayer classes. Each of the Consumer applicants seeks to intervene as a defendant in this action, in order to promote its own and/or New Hampshire consumers' desire for lower retail electric rates, the overriding policy goal that motivated the adoption of the Final Plan:

— *Cabletron:* Cabletron is a New Hampshire Corporation with its principle place of business in Rochester, New Hampshire. Cabletron notes that it is a major consumer of electricity for whom the price of power is a key component of the cost of doing business in the state, which in turn affects the company's ability to compete nationally and internationally.

— *Office of Consumer Advocate:* the OCA is a state agency authorized by state law to represent the interests of residential utility customers "in any proceeding concerning rates, charges, tariffs, and consumer services before any board, commission, agency, court, or regulatory body." N.H.Rev.Stat. Ann. § 363:28(II). As their legal representative, OCA seeks to intervene on behalf of residential ratepayers in order to protect their interest in lower rates.

— *Manchester, NH:* the city, which is itself a ratepayer, seeks to intervene to protect its own interest in lower rates. Presumably, Manchester also represents the interests of its citizens, who are also ratepayers, although this representation is not addressed in the petition for intervention.

— *Campaign for Ratepayers Rights:* the CRR is a non-profit citizens' organization whose members include over 400 residential

and commercial electricity consumers throughout New Hampshire. CRR seeks to intervene to promote its membership's interest in low-cost electric power.

— *Retail Merchants Association:* the RMA is a non-profit corporation with its principal place of business in Concord, New Hampshire. RMA has a membership base of approximately 700 New Hampshire businesses, primarily retail establishments and commercial-class electric customers. RMA also serves as an electric load aggregator for its members, thus allowing the members to purchase power at a discounted rate.

— *Community Action Programs:* CAPS is an alliance of six non-profit organizations who service low-income families through various low-income assistance programs. CAPS seeks to intervene in this action to protect a specific provision of the Final Plan: the imposition of a "system benefit charge" which would be used to fund a rate relief program for low-income electric customers.

The three remaining petitioners are electric utility companies that serve the New Hampshire market: NHEC, Granite State, and Unitil (collectively, "the Utility applicants"). Each of the Utility applicants is within the jurisdictional authority of the Commission, and therefore is subject to Commission regulation and the provisions of the Final Plan:

— *New Hampshire Electric Cooperative:* NHEC, based in Plymouth, New Hampshire, is the second largest electric utility company in the state. NHEC is a non-profit, member-owned and controlled utility that provides distribution service to over 60,000 members. While essentially all of the power that NHEC distributes to its members is purchased from other generating utilities, NHEC also owns some generating facilities of its own and sells its capacity to other distributors.[1] NHEC seeks to intervene as a defendant in this case on two grounds: on behalf of its members (i.e., its customers), who have an interest in low-cost electric service; and as a utility, as NHEC expects that the implementation of the Final Plan would

---

1. In this dual role, NHEC is both a purchaser of power from, and a seller of power to, PSNH.

place it in a better competitive position than under the current regulatory regime.

— *Granite State:* Granite State, headquartered in Salem, New Hampshire, is a subsidiary of the New England Electric System ("NEES"). Granite State operates solely as a retail electric distribution company, serving roughly 36,000 customers in the New Hampshire market. The utility owns no generation facilities of its own, and purchases its power from a NEES affiliate company pursuant to a wholesale requirements contract approved by the Federal Energy Regulatory Commission ("FERC"). Granite State seeks to intervene as a plaintiff in this matter, to assert federal preemption, commerce clause, and takings claims similar to those raised by *PSNH.*

— *the Unitil Group:* Unitil Corporation, a regulated holding company based in Hampton, New Hampshire, is the parent of three New Hampshire utilities: Concord Electric ("Concord"), Exeter & Hampton Electric ("E & H"), and Unitil Power Corporation ("UPC"). Pursuant to a long-term arrangement among the subsidiaries, UPC purchases electric power for and sells power to Concord and E & H under FERC-filed and approved tariffs. In turn, Concord and E & H distribute and sell this power to consumers in their service areas. Like Granite State, Unitil seeks to intervene as a plaintiff to assert preemption, commerce clause, and takings claims similar to those advanced by PSNH.

For their part, plaintiffs object to each of the motions for intervention, while the Commission has offered no objection as to any of the applicants. After hearing the arguments of counsel for plaintiffs, the Commission, and the applicants, the Court took the matter under advisement. The motions are now in order for decision.

**2.** At the outset, the fact that Cabletron, OCA, CRR, RMA, and CAPS have not met the procedural requirements of Rule 24(c) has not escaped the Court's attention. *See Rhode Island Fed'n of Teachers v. Norberg,* 630 F.2d 850, 854–55 (1st Cir.1980). However, rather than denying the motions on this basis and affording the applicants an opportunity to refile their petitions together with the required pleadings, the Court will instead simply proceed to the merits of their applications.

## II. Discussion

Rule 24 distinguishes between two kinds of intervention: intervention of right, governed by Rule 24(a), and permissive intervention, pursuant to Rule 24(b). Since the applicants have premised their motions to intervene on both subsections, the Court will address each basis for intervention in turn.[2]

### A. Intervention of Right

■ Fed.R.Civ.P. 24(a) provides:

Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

With one exception,[3] the applicants do not contend that a federal statute grants them an unconditional right to intervene in this matter; nor is the Court aware of any such law. *See Travelers Indem. Co. v. Dingwell,* 884 F.2d 629, 641 (1st Cir.1989) ("Rule 24(a)(1) is narrowly construed; private parties are rarely given an unconditional right to intervene."). Thus, only the standard set forth in Rule 24(a)(2) is applicable to the present analysis.

■ In order to intervene as of right pursuant to Rule 24(a)(2), an applicant must satisfy four requirements:

(1) The application must be timely;

**3.** It is of no moment that a *state* statute authorizes OCA to represent residential ratepayers in proceedings where ratepayer interests are implicated, as Rule 24(a)(1) explicitly states that the right to intervene must be founded in a *federal* statute. Nor is the Court persuaded by OCA's contention that such a right is provided by 28 U.S.C. § 2348, which governs review of *federal* agency decisions and is thus irrelevant to the present case.

(2) The applicant must claim an interest relating to the property or transaction which is the subject of the action;

(3) Disposition of the action may, as a practical matter, impair or impede that applicant's ability to protect the interest; and

(4) The applicant must show that the interest will not be adequately represented by the existing parties.

*See Conservation Law Found. of New England v. Mosbacher,* 966 F.2d 39, 41 (1st Cir. 1992).

There is no dispute that all of the applicants before the Court meet the first condition, as their applications for intervention are clearly timely. This action was initiated by plaintiffs on March 3, 1997, and all of the applicants had filed motions to intervene on or before March 13. Thus, for all applicants, the first requirement has been Satisfied.

■ Turning to the second part of the Rule 24(a)(2) inquiry, the Court recognizes that "[t]here is no precise and authoritative definition of the interest required to sustain a right to intervene." *Travelers Indemnity,* 884 F.2d at 638. In discussing the interest requirement, the First Circuit has offered that "the intervenor's claims must bear a 'sufficiently close relationship' to the dispute between the original litigants" and that "[t]he interest must be direct, not contingent." *Id.; see also Donaldson v. United States,* 400 U.S. 517, 531, 91 S.Ct. 534, 542–43, 27 L.Ed.2d 580 (1971) (interest must be "significantly protectable"). The First Circuit has further suggested that "the determination of whether an interest is sufficient for Rule 24(a)(2) purposes is colored to some extent by the third factor—whether disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its

interest." *Conservation Law Foundation,* 966 F.2d at 42. However, beyond such broad-brush propositions, "no bright line of demarcation exists," and courts are generally required to consider the facts and circumstances on a case-by-case basis. *See id.* at 42–43.[4]

### 1. The Consumer Applicants

■ To support their right to intervene, the consumer applicants claim an interest in lower electricity prices—in other words, their expectation that the price of electricity will decrease if and when the Final Plan goes into effect. Contending that any decision by this Court invalidating the Final Plan would frustrate this expectation of lower rates, these applicants seek to intervene in order to protect their interests.[5]

■ However, it is unclear whether this interest in lower rates is sufficiently direct to support the Consumer applicants' petitions for intervention. While New Hampshire ratepayers are no doubt the intended beneficiaries of the Final Plan, this does not necessarily give them a direct interest in litigation to determine the validity of the Plan. The Final Plan dictates how utilities must structure their operations for the future, and sets forth the Commission's duties in regulating the industry. These entities—the utilities and the Commission—truly have a direct interest in the Final Plan. *See Conservation Law Foundation,* 966 F.2d at 43 (subjects of regulation have direct interest in litigation to review changes in that scheme). On the other hand, although changes in electric rates would affect the cost of living in New Hampshire, or the cost of operating a business in the State, these would be the indirect, secondary effects of the Final Plan. While the First Circuit has not yet decided the issue, it is questionable whether such a con-

---

4. As the First Circuit has recognized, "the lack of a clear standard may not be of great concern." *See Conservation Law Foundation,* 966 F.2d at 42. Indeed, the inquiry is so sensitive to the particular facts of each case that the search for a bright line rule may be a fruitless exercise, such that "it may be, as some courts have suggested, that this is a question not worth answering." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1908 (1986).

5. As an initial matter, the fact that these applicants were granted full intervenor status in the proceedings before the Commission (or in other related state proceedings) is irrelevant to the current discussion. The standards governing intervention in proceedings before the Commission or in New Hampshire state courts are plainly matters of state law, and thus fail to inform this Court's analysis under Rule 24.

sumer interest is sufficiently direct to qualify for intervention as of right. *See. e.g., New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452, 466–67 (5th Cir.) (en banc), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984) (consumer interest in lower electric rates did not meet interest requirement); *Moosehead Sanitary Dist. v. S.G. Phillips Corp.,* 610 F.2d 49, 52–54 (1st Cir.1979) (incidental, third-party beneficiary interest did not satisfy Rule 24(a)(2)).

In this Court's view, the fundamental problem with the argument advanced by the Consumer applicants is that it is without a logical stopping point. A generalized consumer interest in lower electric rates is common to all ratepayers, whether residential, small business, or industrial users of electricity; in essence, all New Hampshire residents share this interest. Thus, the Consumer applicants would have this Court find that all users of electricity in the state have a sufficient interest in this litigation to support a motion to intervene. Of course, this sort of "consumer interest" argument, akin to a "taxpayer standing" claim, could be made any time a legal challenge is brought to a legislative or regulatory act that might affect market conditions in a given industry. If such a generalized consumer interest were sufficient to justify intervention, this would make the interest requirement of Rule 24(a)(2) so broad that it would become meaningless.

Even if this interest were deemed sufficiently direct, there is also a degree of contingency to the interest that must enter into the Court's analysis. While the Commission urges that implementation of the Final Plan will ultimately lead to lower retail electric rates, there is no guarantee that this will in fact occur. A number of variables must fall into place for the Final Plan to meet its stated goal of rate relief: for example, the utility companies must make an efficient transition in adapting to the altered market structure; current electricity suppliers must remain financially healthy and able to compete; and the market must be conducive to competition, and perhaps attract new entrants to stimulate competition in the supply of electricity. Such a contingent expectation of lower rates provides, at best, a questiona-ble foundation for intervention as of right. *See Travelers Indemnity,* 884 F.2d at 638–39 (to satisfy Rule 24(a)(2), "[t]he interest must be direct, not contingent.").

■ Finally, the Court notes that a decision adverse to the Commission in this case would not necessarily frustrate the applicants' asserted interest in lower rates. If this Court were to invalidate the Final Plan, the Commission would no doubt begin another set of proceedings to adopt a modified restructuring plan, at which point the Consumer applicants could once again assert their interest in rate relief. Therefore, because they would have another forum in which to protect their interest, the Consumer applicants fall short of the "practical impairment" requirement of Rule 24(a)(2). *See Flynn v. Hubbard,* 782 F.2d 1084, 1092–93 (1st Cir.1986) (concurring opinion) (intervention not required where applicant would have subsequent opportunity to protect economic interest)

■ Putting aside any doubts anent the interest asserted by the Consumer applicants, the fourth requirement of Rule 24(a)(2) provides an independent basis for denying their entreaties to intervene as of right. In arguing that the Commission cannot adequately represent ratepayer interests, the Consumer applicants note that the Commission is under a statutory duty to "balance the interests of ratepayers and utilities" in determining matters related to the restructuring, including the establishment of stranded cost charges and ultimately the setting of rates. *See* N.H.Rev.Stat. Ann. § 374–F:3(XII)(a). In light of this requirement, the Consumer applicants maintain that the Commission cannot adequately represent their more specialized and targeted interest in lower electric rates.

■ However, for the purposes of this dispute, the Court finds that the Commission does adequately represent the interests of the Consumer applicants. Critical to this determination is the simple fact that the Consumer applicants and the Commission have the same ultimate goal in this case: upholding and defending the legal validity of the Final Plan. Under First Circuit prece-

dent, In this instance the Court must apply a presumption that the Commission adequately represents the interests of the Consumer applicants. The governing standard is as follows:

> Where the party seeking to intervene has the same ultimate goal as a party already in the suit, courts have applied a presumption of adequate representation. To overcome this presumption, petitioner ordinarily must demonstrate adversity of interest, collusion, or nonfeasance.

*Moosehead Sanitary District,* 610 F.2d at 54 (citations omitted); *see also United Nuclear Corp. v. Cannon,* 696 F.2d 141, 144 (1st Cir.1982) ("The prospective intervenor faces a presumption of adequacy when it has the same ultimate goal as a party."). Further, the First Circuit has advised district courts to ask the following questions in determining whether applicants have overcome this presumption of adequate representation:

> (1) Are the interests of a present party in the suit sufficiently similar to that of the absentee such that the legal arguments of the latter will undoubtedly be made by the former; (2) is that present party capable and willing to make such arguments; and (3) if permitted to intervene, would the intervenor add some necessary element to the proceedings which would not be covered by the parties in the suit?

*United Nuclear,* 696 F.2d at 144 (adopting test set forth in *Blake v. Pallan,* 554 F.2d 947, 954–55 (9th Cir.1977)).

These precedents clearly control the fate of the Consumer applicants' petitions for intervention as of right—they share the same ultimate goal as the Commission, and have not overcome the presumption of adequate representation. First, there is no hint of "adversity of interest, collusion, or nonfeasance" that would render the Commission's representation inadequate/ The simple fact that the applicants represent a more specialized interest than the Commission does not make their interest "adverse" to that of the Commission; the same factual situation was presented in *United Nuclear,* and was insufficient to overcome the presumption of adequate representation. *See United Nuclear,* 696 F.2d at 144–45.

Moreover, turning to the factors outlined in *United Nuclear,* there is no indication that the Consumer applicants would "add some necessary element to the proceedings which would not be covered by the parties in the suit." *Id.* at 144. On the contrary, it is apparent that the Commission and the applicants would offer the same legal arguments in defense of the Final Plan, and that the Commission is fully capable and willing to make all such arguments. In short, because the Commission "appears ready, willing, and able to vigorously defend the constitutionality of the [Final Plan]," *id.,* the Court concludes that the Commission will adequately represent the interests of the Consumer applicants for the purposes of this litigation.

## 2. The Utility Applicants

The position of the Utility applicants presents a much more compelling case for intervention as of right. First, these applicants clearly have a sufficient interest in the subject matter of this litigation. The Commission's Final Plan makes significant changes in the structure and operation of the state's electric utility industry, "[c]hanges in the rules [that] will affect the proposed intervenors' business, both immediately and in the future." *Conservation Law Foundation,* 966 F.2d at 43. As the ultimate targets of the restructuring, these electric utility companies have a direct interest in the substance of the Final Plan, and thus have a "sufficiently close relationship" to this dispute to support their motions to intervene. *See id.* at 43–44 (regulated entities have direct interest in action to review proposed changes in regulatory scheme).

Further, the outcome of this litigation would as a practical matter impede the Utility applicants' ability to protect this interest. For example, because Granite State and Unitil share many of the same preemption, commerce clause, and takings concerns advanced by PSNH, a decision by this Court upholding the legal validity of the Final Plan would carry a precedential weight that would no doubt hamper any efforts to press these claims in a separate forum. *See, e.g., Chiles v. Thornburgh,* 865 F.2d 1197 (11th Cir.1989)

(potential *stare decisis* effect sufficient to satisfy "practical disadvantage" requirement of Rule 24(a)(2); binding *res judicata* effect not required). The same applies to NHEC, even though NHEC seeks to intervene on the Commission's side and contend that the Final Plan is valid. While NHEC could certainly ask the Commission to adopt a revised plan to give it the competitive opportunities afforded by the Final Plan, this Court's decision invalidating the Final Plan would affect the market conditions under which NHEC would operate in the interim, an "impairment" of interest sufficient to satisfy Rule 24(a)(2).

■ Turning to the question of adequate representation, the Court concludes that the Utility applicants meet this requirement as well. Of course, the original parties to this suit already represent the "ultimate goal" sought by each of the applicants. Unitil and Granite State, who seek to intervene as plaintiffs, have the same goal as PSNH: a declaration that the Final Plan is invalid. On the flip side, NHEC seeks to intervene as a defendant and shares the same ultimate goal as the Commission. Therefore, each of the Utility applicants must overcome the presumption that PSNH or the Commission can adequately represent its respective interest for the purposes of this action. *See United Nuclear*, 696 F.2d at 144.

■ Addressing the position of Unitil and Granite State first, the Court concludes that these applicants easily overcome the presumption of adequacy. First, and most centrally, Unitil, Granite State, and PSNH are competitors in the New Hampshire electric utility market. In the Court's view, this factor alone highlights an "adversity of interests" sufficient to overcome the presumption of adequacy. Further, because the three utilities have different operating structures and affiliate relationships,[6] the Final Plan presents somewhat different legal concerns for each. For this reason, while the utilities are expected to rely on the same legal theories, it is likely that Unitil and Granite State would be in a position to offer a different

angle on the same legal questions, and raise preemption and confiscation issues distinct from those raised by PSNH. In other words, since Unitil and Granite State could "add some necessary element to the proceedings which would not be covered by the parties in the suit," *id.*, they overcome the presumption of adequate representation.

■ Turning to NHEC, the Court also concludes that it meets the fourth requirement for intervention as of right. Unlike the case of the Consumer applicants, the Court cannot conclude that the Commission adequately represents the interests of NHEC. While these two entities desire the same Outcome in this case, in the regulatory arena NHEC and the Commission are in a traditionally adversarial relationship: the Commission is the regulator and NHEC is a subject of the regulation. Thus, the outcome of this litigation—which will determine the validity of changes in the regulatory scheme—will affect the contours of the overarching regulatory relationship between NHEC and the Commission. The Court submits that this relationship is sufficiently adverse to overcome the presumption of adequacy, especially at a time when the Commission is reviewing compliance filings, evaluating stranded cost recovery requests, and issuing rules and orders that will govern NHEC's conduct in the future. *See Conservation Law Foundation*, 966 F.2d at 44–45 (regulator does not adequately represent interests of regulated entities).

In sum, the Court concludes that Unitil, Granite State, and NHEC meet the four requirements of Rule 24(a)(2), and thus will be allowed to intervene in this litigation as of right. However, the Court also finds that the Consumer applicants—Cabletron, OCA, Manchester, CRR, RMS, and CAPS—do not satisfy the requirements set forth in Rule 24(a)(2). Therefore, the Court will proceed to consider whether the Consumer applicants should be permitted to intervene pursuant to Rule 24(b).

---

6. For example, while Granite State and Unitil are primarily distribution utilities that purchase their power from out-of-state sources, PSNH is a vertically integrated utility that serves the generation, transmission, and distribution functions.

## B. Permissive Intervention

Fed.R.Civ.P. 24(b) provides, in relevant part:

> Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

In addition, an applicant for permissive intervention must show an independent basis for federal jurisdiction over the claims or defenses on which intervention is sought. *See International Paper Co. v. Town of Jay,* 887 F.2d 338, 346 (1st Cir.1989).

Therefore, there are only three prerequisites to permissive intervention: (1) the application must be timely; (2) the applicant's claim or defense for intervention must share a common question of law or fact with the original action; and (3) there must be an independent jurisdictional ground for the applicant's claim or defense. The Court will assume, without deciding, that these elements are satisfied in this case.

However, even when each of these elements is satisfied, a court may nonetheless exercise its discretion to deny the motion to intervene. *See New York News, Inc. v. Kheel,* 972 F.2d 482 (2d Cir.1992). As indicated by the express language of Rule 24(b), the principle consideration a court must weigh in exercising this discretion is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *See United States Postal Serv. v. Brennan,* 579 F.2d 188, 191 (2d Cir.1978). Courts have also considered numerous other factors in making this determination, such as whether an existing party adequately represents the applicant's interests; whether an applicant is currently a party to another proceeding in which his interest will be protected; and whether an applicant is expected to advance any arguments not presented by the parties. *See. e.g,. Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326 (9th Cir.1977); 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1913 (1986) (collecting cases).

In this case, the Court will exercise the discretion given by Rule 24(b) to deny the motions for intervention. Unquestionably, allowing the Consumer applicants full-party status would delay the adjudication. of this action. Even if the intervenors were to call no witnesses of their own, they would be the source of an additional layer of motions, briefs, objections, and cross-examinations that would invariably show the progress of this case. The Court might be willing to accept such delays if the efforts of the prospective intervenors could be expected to contribute to the just and equitable resolution of the issues at bar. However, this is not such a case. As was discussed earlier in this memorandum, the Commission—which itself represents ratepayer interests and seeks the same ultimate outcome in this litigation as the Consumer applicants—appears ready, willing, and able to advance all of the arguments that the Consumer applicants would offer. Because their full-party presence would only engender delays and repetition, and thus unnecessarily place further demands on the resources of this Court and of the parties, the Consumer applicants will not be permitted to intervene in this action.

## III. Conclusion

For all of these reasons, the Court concludes that each of the Utility applicants has satisfied the requirements for Rule 24(a)(2) intervention, and therefore shall be granted full-party status in this litigation. However, the Court concludes that the Consumer applicants have not. met the requirements of Rule 24(a). Exercising the discretion given to it by Rule 24(b), the Court determines that the Consumer applicants should not be permitted to intervene in this action.

Accordingly, the motions of NHEC, Granite State, and Unitil are granted, and the motions of Cabletron, OCA, Manchester, CRR, RMA, and CAPS are denied.

It is so ordered.