**SOLID WASTE AGENCY OF NORTH-ERN COOK COUNTY, Plaintiff–Appellee,**

v.

**UNITED STATES ARMY CORPS OF ENGINEERS, et al., Defendants.**

**Appeal of VILLAGE OF BARTLETT and Citizens Against the Balefill, Petitioners to Intervene as Defendants, Appellants.**

No. 95–3324.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 16, 1996.

Decided Nov. 26, 1996.

Russell R. Eggert, Michael P. Rissman, Julian C. Esposito, Mayer, Brown & Platt, Chicago, IL, George J. Mannina, Jr. (argued), Gary C. Adler, David L. Anderson, O'Connor & Hannan, Washington, DC, for Plaintiff–Appellee.

Peter Flynn (argued), Cherry & Flynn, Chicago, IL, for Petitioners to Intervene as Defendants, Appellants.

Before POSNER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

POSNER, Chief Judge.

The Village of Bartlett, in Cook County, Illinois, and a group of Bartlett residents that calls itself "Citizens Against the Balefill," appeal from the denial of their motion to intervene in a suit brought by a joint venture of 23 Cook County municipalities known as the Solid Waste Agency of Northern Cook County. 163 F.R.D. 268 (N.D.Ill.1995).

SWANCC wants to build a landfill on a wooded and watery 533–acre site adjacent to Bartlett. The landfill would occupy 182 of these acres, centered on an abandoned gravel pit in which the nonhazardous wastes of SWANCC's members would be buried after first being placed in bales (hence "balefill"). After the Corps of Engineers determined that the site contains navigable waters subject to the Corps' jurisdiction under section 404 of the Clean Water Act, 33 U.S.C. § 1344, SWANCC applied for a section 404 permit to build the landfill; and when the Corps denied it on the ground that the landfill would violate the Act, SWANCC filed this suit to undo the denial on the ground that the Corps lacks jurisdiction over the site or alternatively that the denial was arbitrary and capricious. 28 U.S.C. § 1331; Administrative Procedure Act, 5 U.S.C. § 702. Motions for summary judgment on the jurisdictional issue have been filed and are awaiting decision in the district court.

The Village of Bartlett and Citizens Against the Balefill want to intervene on the side of the Corps to protect their interest in keeping the landfill from being built. They believe that the landfill would lower property values in Bartlett, that its operation would produce noise, dust, and odors in the adjacent residential areas, and that it would deprive the village's residents of the environmental amenities that the site affords in its present undeveloped state. Although the site is fenced and not accessible for recreational use, its trees and waterways, which the landfill would harm, attract a variety of birds, and both the birds and the trees are visible to people in Bartlett and enhance their sense of well being. The would-be intervenors worry that the Department of Justice, which is the Corps of Engineers' lawyer, having broader interests than merely enforcing the Clean Water Act in one small tract of land, may settle the suit on terms that do not fully protect the would-be intervenors' interest, or that it may decide not to appeal a judgment in favor of SWANCC should one be rendered. They do not argue that the Department is at present failing to defend the Corps with utmost vigor. Their fear is that its zeal may slacken before the

litigation runs its course and that it will be too late for them to intervene then.

Rule 24(a)(2) of the Federal Rules of Civil Procedure confers a right of intervention upon one who "claims an interest relating to" the subject matter of the suit in which he wants to intervene, provided that the disposition of the suit might "impair or impede" his ability to protect that interest and the interest is not "adequately represented" by a party to the suit. The district judge thought the Village and the citizens' group lack the requisite "interest" because they have no property rights in the site of the proposed landfill, which is not within the village boundaries. In any event the Justice Department was, he found, adequately representing their interest.

The question what "interest" is required to support a right of intervention is a difficult one, and let us see whether we can clarify it. It will help to consider what rights these would-be intervenors would have if the Corps of Engineers had granted the permit for the landfill rather than denied it. Notwithstanding their lack of a property right in the site, they would have a sufficient interest to give them standing to challenge the grant of the permit in a federal court; equivalently, they would be "adversely affected or aggrieved" (synonyms) by the grant within the meaning of the Administrative Procedure Act. 5 U.S.C. § 702. To have standing, or to be "aggrieved," requires (1) having suffered (or having the prospect of suffering) the *kind* of harm (that is, concrete and personal) that would support a suit at common law, whether or not the particular harm is one that the common law created a remedy for, provided (2) that the harm is to an interest that is protected by the statute claimed to provide the ground of relief. E.g., *Air Courier Conference v. American Postal Workers Union*, 498 U.S. 517, 523, 111 S.Ct. 913, 917–18, 112 L.Ed.2d 1125 (1991); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990).

A reduction in property values caused by activities on a neighboring piece of land, and an assault on the senses by noise, dust, and odors, are just the kinds of harm that common law suits to abate a nuisance are designed to redress. It would make no difference if the decline in property values were wholly due to an *irrational* fear of garbage dumps. That might or might not knock out a nuisance suit. Compare *DeSario v. Industrial Excess Landfill, Inc.*, 68 Ohio App.3d 117, 587 N.E.2d 454, 461 (1991), with *Berry v. Armstrong Rubber Co.*, 989 F.2d 822, 829 (5th Cir.1993). That would be the issue on the merits. All that would be important to standing would be whether it was the kind of harm that the common law protects people against (it would be—property values are in the core of the interests that the common law protects) and that the Clean Air Act provides a remedy for. We cannot find any case on the latter question, and only a hint (supporting our conjecture) in the secondary literature. 2 William H. Rodgers, Jr., *Environmental Law: Air and Water* § 4.13, p. 207 (1986). The Act is directed immediately against water pollution but ultimately against the harms that water pollution produces. They are harms to the range of environmental interests endangered by such pollution. *Save Our Community v. EPA*, 971 F.2d 1155, 1161 (5th Cir.1992) (per curiam); *Save Our Wetlands, Inc. v. Sands*, 711 F.2d 634, 640 (5th Cir.1983). Those interests overlap to a great extent the interests that nuisance law protects. Indeed, the major difference is that environmental statutes regulate more subtle and attenuated harms than the common law of nuisance does; a land use that creates a common law nuisance is thus likely to be an *a fortiori* violation of statutory environmental law. The significance of this point is that a statutory violation that has nuisance-like consequences may confer standing on the persons harmed by those consequences even if there is no reduction in property values.

Less clear is whether deprivation of the pleasure of watching birds and trees on another person's property is the kind of harm for which the watchers can seek a remedy in federal court. Because the common law sometimes (not regularly) protects vistas, *Justice v. CSX Transportation, Inc.*, 908 F.2d 119, 123 (7th Cir.1990); *Hullinger v. Prahl*, 89 S.D. 443, 233 N.W.2d 584 (1975), and because an unsightly land use can be an

actionable nuisance, it is possible for an aesthetic interest to be the basis of a lawsuit even if the interest is in the use made of property that one is not permitted to enter. See *Save Our Community v. EPA, supra,* 971 F.2d at 1161; *Sierra Club v. Simkins Industries, Inc.,* 847 F.2d 1109, 1112 n. 3 (4th Cir.1988); 3 Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 16.4, p. 21 (3d ed.1994). We do not read *Lujan* to deny this possibility, but rather to establish the distinct principle that mere distress at activities or conditions that the plaintiff cannot see or hear or otherwise perceive directly, but can merely think about—that might exist only in remote parts of the world—is not a grievance that can found a federal suit.

But is "interest" in Rule 24(a)(2) identical to the interest that is required to confer standing? It could be less, since by assumption there are parties with standing already in the case. Or it could be more, or different. Our cases say that the prospective intervenor's interest must be direct, significant, and legally protectable. E.g., *Security Ins. Co. v. Schipporeit, Inc.,* 69 F.3d 1377, 1380–81 (7th Cir.1995); *United States v. 36.96 Acres,* 754 F.2d 855, 859 (7th Cir.1985). The clearest example of such an interest, although not always the clearest case for intervention as a matter of right, is where the would-be intervenor has a legal claim that could be made the basis of an independent suit against the defendant in the action in which he seeks to intervene. Our hypothetical variant in which SWANCC's application for a permit is granted would be such a case if the would-be intervenors could have challenged such a grant by a suit brought under the Clean Water Act, the Administrative Procedure Act, or some other source of legal rights. Of course, if they could bring their own suit, they might not be able to show that they had to intervene in someone else's suit to protect their rights. *Shea v. Angulo,* 19 F.3d 343, 347 (7th Cir.1994). They might be able to show this, however, if the remedy in the other suit would as a practical matter preclude the remedy they wanted. If not, it would be a case for permissive intervention, Fed.R.Civ.P. 24(b), on the model of permissive joinder, rather than for intervention as a

matter of right. See, e.g., *United States v. Texas Eastern Transmission Corp.,* 923 F.2d 410, 414 (5th Cir.1991); *Harris v. Illinois–California Express, Inc.,* 687 F.2d 1361, 1367 (10th Cir.1982).

It is uncertain whether, had the permit been granted, our would-be intervenors could have brought their own suit. The Clean Water Act does not create a *general* right of action against the Corps for the grant or denial of a permit. *Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers,* 87 F.3d 1242, 1249 (11th Cir.1996). The Act does create a right of action with respect to nondiscretionary acts, 33 U.S.C. § 1365(a)(2); *National Wildlife Federation v. Hanson,* 859 F.2d 313, 315–16 (4th Cir.1988), but against the Administrator of the Environmental Protection Agency, who shares enforcement responsibilities under the Act with the Corps of Engineers, rather than against the Corps itself. *Hanson* thought this made no difference; *Preserve Endangered Areas* thought it did. We needn't take sides. The grant of a section 404 permit would almost certainly be considered a discretionary act.

There might be other legal grounds on which to attack such a grant. See, e.g., *Fund for Animals, Inc. v. Rice,* 85 F.3d 535, 546 (11th Cir.1996). Notably, there is authority for challenging it under the Administrative Procedure Act as arbitrary or capricious. 5 U.S.C. §§ 702, 706(2)(a); *National Wildlife Federation v. Whistler,* 27 F.3d 1341, 1344 (8th Cir.1994); *Sierra Club v. U.S. Army Corps of Engineers,* 701 F.2d 1011, 1031–33 (2d Cir.1983); *Friends of the Earth v. Hintz,* 800 F.2d 822, 830–31 (9th Cir.1986). Administrative action is arbitrary and capricious when it is contrary to law. But if the only basis for a challenge to the grant of a permit were that the Corps had violated section 404, to allow the challenge to go forward would be to countenance an end run around the provision of the Clean Air Act that authorizes court challenges only to the nondiscretionary acts of the enforcement agencies. Or so it could be argued; we need not decide.

The strongest case for intervention is not where the aspirant for intervention could file an independent suit, but where the intervenor-aspirant has no claim against the defendant yet a legally protected interest that could be impaired by the suit. David L. Shapiro, "Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators," 81 *Harv.L.Rev.* 721, 726–27 (1968). For it is here that intervention may be essential. Suppose a power company applied for a permit to build a hydroelectric dam that would cause the flooding many miles above the dam of someone's property, rendering it worthless. The permit is granted and the grant challenged in court by an environmental agency. Let us say that the owner of the remote property is not entitled by the applicable law to bring his own suit challenging the grant of the permit; maybe that law contains no provision for suits by private individuals, or maybe he has no ground for challenging the grant of the permit as such, but merely wants the court to exercise its equitable discretion and condition the grant on the adoption of measures, so far as the law permits, for minimizing the effect of the grant on his property. The statute might forbid intervention. But if it did not, our hypothetical property owner could intervene in the environmental agency's suit, because the resolution of that suit could as a practical matter destroy his property right. The threatened injury would give him the minimal standing required by Article III, which our court requires of any intervenor. E.g. *United States v. 36.96 Acres, supra,* 754 F.2d at 859. Some other courts do not require this. E.g., *Associated Builders & Contractors v. Perry,* 16 F.3d 688, 690 (6th Cir.1994). The Supreme Court has not resolved the conflict, *Diamond v. Charles,* 476 U.S. 54, 68–69 and n. 21, 106 S.Ct. 1697, 1706–07 and n. 21, 90 L.Ed.2d 48 (1986), but there is less to it than meets the eye, since *Diamond* makes clear that a case must be dismissed if the only party on one side of the suit is an intervenor who lacks standing.

■ The present case, still assuming counterfactually that the Corps had granted rather than denied the permit to build the balefill, would be the same as our hypothetical suit involving the hydroelectric project. The would-be intervenors' property rights would be impaired, and their legally protected interest (protected by the law of nuisance) against being subjected to noise, dust, and odors by a neighboring land use would also be impaired, by the grant of the permit. On either basis they would be entitled to intervene, provided they could prove inadequate representation by the Department of Justice, of which more shortly.

We must ask what difference it makes that the Corps denied rather than granted the permit. The answer is none. The test is whether the outcome of the suit might impair or impede the would-be intervenor's interest. The outcome of the suit may be an order that the Corps grant the permit. Consider again our hypothetical case of the permit to build a dam. Suppose the permit had been denied, and the denial challenged in court by the power company. The property owner would be entitled to intervene to defend the denial (assuming, again, inadequacy of representation), since if the denial were reversed and the permit granted his property would be damaged.

■ Where does this analysis leave the requirement that the interest of the person seeking intervention as a matter of right must be "direct, significant, and legally protectable"? This formula is best understood as meaning that, because intervention can impose substantial costs on the parties and the judiciary, not only by making the litigation more cumbersome but also (and more important) by blocking settlement, *Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525, 531 (7th Cir.1988), the would-be intervenor will not be permitted to push out the already wide boundaries of Article III standing. It is not enough to show a purely theoretical possibility that the suit might impair an interest not *so* attenuated as to fall outside even the most expansive and imaginative siting of those boundaries. In other words, "direct, significant, and legally protectable" serves an adjectival rather than a substantive function, emphasizing this court's commitment to keeping the scope of intervention of right within reasonable bounds. In *United States v. 36.96 Acres,* which contains the

fullest discussion of the formula, the aspiring intervenor was a citizens' lobbying group with no direct interest in the property in question, yet because the case preceded *Lujan* it is conceivable that the group would have been held to have standing. Now that the requirement of standing in environmental cases has been stiffened, the importance of the formula is diminished. The interest asserted in our hypothetical case of the hydroelectric project, and the interest asserted by the would-be intervenors in this case insofar as they complain that the landfill is a nuisance, fall well within the bounds of the stiffer standard.

The stumbling block for the would-be intervenors in this case is the requirement of proving inadequacy of representation by existing parties. The requirement is taken seriously and for good reasons already touched upon. Increasing the number of parties to a suit can make the suit unwieldy. Of particular concern, it can impede settlement. With immaterial exceptions, such as the case of a class member who has forgone his right to opt out of the class action, a party cannot be forced to settle a case. An intervenor acquires the rights of a party. He can continue the litigation even if the party on whose side he intervened is eager to settle. *United States v. City of Chicago*, 897 F.2d 243, 244 (7th Cir.1990); *Bethune Plaza, Inc. v. Lumpkin, supra,* 863 F.2d at 531; cf. *United States v. Yonkers Board of Education,* 801 F.2d 593, 596 (2d Cir.1986). This blocking right is appropriate if that party cannot be considered an adequate representative of the intervenor's interests, but not otherwise.

■ Where the interests of the original party and of the intervenor are identical—where in other words there is no conflict of interest—adequacy of representation is presumed. *United States v. South Bend Community School Corp.,* 710 F.2d 394, 396 (7th Cir.1983); *Arrow v. Gambler's Supply, Inc.,* 55 F.3d 407, 409–10 (8th Cir.1995). That is the case here, unlike *Trbovich v. United Mine Workers,* 404 U.S. 528, 538–39, 92 S.Ct. 630, 636–37, 30 L.Ed.2d 686 (1972), in which the government had substantive interests at variance with that of the individual on whose behalf it had sued. The interest of the Corps of Engineers and of the would-be intervenors in this litigation instituted by SWANCC is the same: to defeat SWANCC's effort to invalidate the denial of the permit. The would-be intervenors point out correctly that the Department of Justice, the Corps' lawyer, has additional interests stemming from its unique status as the lawyer for the entire federal government (and it cannot be sued by the Corps for malpractice!). Were this enough to establish inadequacy of representation, then in no case brought or defended by the Department could intervention be refused on the ground that the Department's representation of the would-be intervenor's interest was adequate. The law is contrary. E.g., *Keith v. Daley,* 764 F.2d 1265, 1270 (7th Cir.1985); *United States v. South Bend Community School Corp.,* 692 F.2d 623, 627 (7th Cir.1982); *United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d 968, 984–87 (2d Cir.1984) (Friendly, J.). More is needed than a presumption of inadequacy based on the diversity of the Department's interests, and is not forthcoming in this case. There is no suggestion that the Department is dragging its heels in defending the Corps or is prepared to sell out the Corps for the sake of some competing interest of the United States.

No suggestion *as of now*, at any rate. We are sympathetic to the aspiring intervenors' concern that at some future point in this litigation the government's representation of their interest may turn inadequate yet it would be too late to do anything about it. The easiest case to envisage is the following: The district court grants summary judgment for SWANCC, and the Department of Justice has to decide whether to appeal. All appeals by federal government agencies must be approved by the Solicitor General, who might decide for reasons unrelated to the likely outcome of an appeal not to authorize appeal. The case might be unimportant and the Solicitor General reluctant to pester the court of appeals with an unimportant case, which might dilute the impact of other government appeals. In such a case, the representation of the would-be intervenors' interest by the Department of Justice could well be thought inadequate, cf. *Meek v. Metropolitan Dade County,* 985 F.2d 1471, 1478 (11th Cir.1993);

*Americans United for Separation of Church & State v. City of Grand Rapids,* 922 F.2d 303, 305–06 (6th Cir.1990), yet they might not even discover what the Department had done before the time for taking an appeal expired. See *Jenkins ex rel. Agyei v. Missouri,* 967 F.2d 1245, 1248 (8th Cir.1992).

■ The proper way to handle such an eventuality is for the would-be intervenor, when as here no present inadequacy of representation can be shown, to file at the outset of the case a standby or conditional application for leave to intervene and ask the district court to defer consideration of the question of adequacy of representation until the applicant is prepared to demonstrate inadequacy. This procedure, to which we find no objection in the federal rules or elsewhere, would not expose the applicant for intervention to charges of foot-dragging that doom as belated the usual post-judgment application to intervene. See, e.g., *United States v. City of Chicago, supra,* 897 F.2d at 244; cf. *United States v. South Bend Community School Corp., supra,* 692 F.2d at 627. And it would reduce although not completely eliminate the danger of the application's becoming moot because of the failure of a party to appeal. Were the application denied shortly before the expiration of the time for appeal, or not acted upon until the time had expired, the would-be intervenor could nevertheless protect himself by filing a notice of appeal conditional on the court of appeals' granting the application to intervene, as in *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 390, 97 S.Ct. 2464, 2467–68, 53 L.Ed.2d 423 (1977). This course remains open to the appellants in this case.

We are mindful of the argument that private parties should not be allowed to hijack, via intervention, a government suit. If the Justice Department, with its broader perspective than that of any individual federal agency, such as the Corps of Engineers, decides to "sell out" the Corps in a particular case for some larger governmental interest, why should a private party who may not have a right to sue on his own be able to keep the suit alive? Congress can if it wants preclude intervention in such cases. But if it does not do so and the requirements for intervention are met, we cannot find in Rule 24(a) an exception for the case in which the inadequate representative of the private interest is the Department of Justice rather than a private litigant.

■ We are not done. The appellants also sought permissive intervention. The district judge denied intervention on this basis because of the appellants' lack (as the judge thought) of an "interest" sufficient to justify intervention. But "interest" does not appear in Rule 24(b). All that is required for permissive intervention, so far as bears on this case, is that the applicant have a claim or defense in common with a claim or defense in the suit. Fed.R.Civ.P. 24(b)(2). If this condition is satisfied, as it appears to be, the judge must then decide as a matter of discretion whether intervention should be allowed. Misconceiving the applicable standard, the judge failed to exercise his discretion, and the judgment, insofar as it denies permissive intervention, must therefore be vacated and the case remanded for that exercise.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.