OPINION OF THE COURT
WEIS, Circuit Judge.
The district court denied a request for intervention by local governmental bodies and business concerns in litigation brought by environmentalists to restrict logging activities in a National Forest. We conclude that the proposed intervenors established a threat to their interests from the suit and a reasonable doubt whether the government agency would adequately represent those concerns. Accordingly, we reverse the district court’s order and remand for further proceedings.
Plaintiffs are six Pennsylvania and Ohio residents and an Indiana organization committed to environmental preservation. They filed suit against the United States Forest Service (“Service”) asserting that the agency had violated statutory requirements in approving two projects that permitted substantial tree cutting in the Allegheny National Forest. Plaintiffs requested an injunction barring implementation of the proposed measures, halting all logging activity, and suspending or canceling contracts for logging in the forest. In addition, plaintiffs sought a declaration that approval of the projects was arbitrary, capricious, and not in conformity with the law. •
Through the National Forest Management Act of 1976, Congress authorized the Secretary of Agriculture to develop land and resource plans that are used as a guide to all resource activities in a national forest, including timber harvesting. See 16 U.S.C. § 1604. The process is described in some depth in *968 Ohio Forestry Association v. Sierra Club, - U.S. -, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) and need not be detailed here. The statute also imposes procedural obligations on the Secretary to ensure that environmental interests will be considered in the plan.
In 1997, the Service, as the Secretary’s designee, approved the Minister Watershed Project and the South Branch Willow Creek Project, both covering areas within the Allegheny National Forest in Northwestern Pennsylvania. The projects called for substantial tree harvesting through “even-aged management.” This process, in general terms, contemplates clearing designated areas of all trees, rather than focusing on individual trees within the given tract, the latter being far more costly and time-consuming for timber companies. See 36 C.F.R. § 219.3; see also Sierra Club v. Espy, 38 F.3d 792, 795, 798-800 (5th Cir.1994) (discussing the technique and Congressional approval at some length). In launching the projects, the Service concluded that they were consistent with the resource plan and would not create a significant environmental impact within the forest.
The plaintiffs’ complaint alleges that the projects violate the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332, because of the lack of an environmental impact statement and, among other things, the failure to consider more environmentally-protective alternatives. The complaint also alleges several violations of the National Forest Management Act, including an objection to even-aged management and the “landscape corridor approach,” which endorses the even-aged timber-cutting philosophy.
A motion for leave to intervene was filed by a number of area school districts located near the Allegheny National Forest, including Ridgway, Bradford, Kane, Johnsonburg, and Smethport. In addition, six townships— Cherry Grove, Hamilton, Hamlin, Highland, Wetmore, and Jones — sought intervention.
The school districts and municipalities asserted an interest in the suit because they receive funds from receipts of logging operations in the forest. By statute, the federal government disburses twenty-five percent of the gross amounts received from the forest to the Commonwealth of Pennsylvania at the end of each fiscal year. 16 U.S.C. § 500. In turn, the Commonwealth forwards these sums to counties where the forest is situated, which then pass the money on to local municipalities and school districts for the benefit of public schools and roads. 72 Pa.C.S.A. §§ 3541-3543. During the ten years preceding the filing of this suit, the federal government disbursed, on average, in excess of $4 million per year to the Commonwealth. Elimination of logging contracts would deprive the localities of this resource.
Joining the motion for leave to intervene were Brookville Wood Products, Inc., Northeast Hardwoods, Ridgway Lumber Co., Payne Forest Products, Inc., Spilka Wood Products Co., and Allegheny Hardwood Utilization Group, Inc. Payne and Spilka have existing contracts to cut timber as part of the Minister Watershed Project. Ridgway was the successful bidder on a contract under the South Branch Willow Creek Project, but the Service has withheld awarding the contract pending the outcome of this litigation. Brookville Wood Products and Northeast Hardwoods are also lumber companies that generate most of their income from contracts with the Service. Allegheny Hardwood is a nonprofit corporation whose members hold existing sales contracts with the Service and expect to bid on future timber sales contracts that would be affected by this litigation.
The district court reviewed the prerequisites for intervention as set out in Federal Rule of Civil Procedure 24(a)(2) and denied the motion as to all applicants except Payne and Spilka. In those two instances, the court determined that intervention was justified because existing contract rights would be threatened if plaintiffs prevailed.
The court observed that the other applicants had interests of “an economic nature based on expectation.” Although those “interests are very important, the court is compelled to conclude based on the case law that they are not the type of protectable interests that justify intervention as of right under Rule 24(a)(2).” The court also denied permissive intervention under Rule 24(b)(2). All of the unsuccessful applicants have appealed.
*969 I.
During the pendency of this appeal, the district court entered summary judgment for defendants on most claims asserted by plaintiffs with respect to the two projects because of the failure to exhaust administrative remedies. The district court is presently considering whether claims challenging the landscape corridor approach as a management philosophy should suffer a similar fate.
Plaintiffs have secured a certification under Federal Rule of Civil Procedure 54(b) and are appealing the adverse district court ruling. Because that order and any future adverse action on the remaining claim might be reversed by this Court or the Supreme Court, the applicants’ ability to participate remains a viable issue. This appeal consequently is not moot. Mausolf v. Babbitt, 85 F.3d 1295, 1297 (8th Cir.1996); United States Postal Serv. v. Brennan, 579 F.2d 188, 190 n. 1 (2d Cir.1978).
II.
Federal Rule of Civil Procedure 24 provides in pertinent part:
“(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest, unless the applicant’s interest is adequately represented by existing parties.”
We have interpreted Rule 24(a)(2) to require proof of four elements from the applicant seeking intervention as of right: first, a timely application for leave to intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate representation of the prospective intervenor’s interest by existing parties to the litigation. Mountain Top Condo. Ass’n. v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 365-66 (3d Cir.1995); Development Fin. Corp. v. Alpha Hous. & Health Care, Inc., 54 F.3d 156, 161-62 (3d Cir.1995); United States v. Alcan Alum., Inc., 25 F.3d 1174, 1181 (3d Cir.1994); Brody v. Spang, 957 F.2d 1108, 1115 (3d Cir.1992); Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir.1987).
We will reverse a district court’s determination on a motion to intervene as of right if the court has abused its discretion by applying an improper legal standard or reaching a conclusion we are confident is incorrect. Harris, 820 F.2d at 597. The parties to this appeal do not dispute the timeliness of the motion for leave to intervene, so we move on to consider the other elements. ■
To justify intervention as of right, the applicant must have an interest “relating to the property or transaction which is the subject of the action” that is “significantly protectable.” Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). That observation, however, has not led to a “precise and authoritative definition” of the interest that satisfies Rule 24(a)(2). Mountain Top Condo., 72 F.3d at 366; see also Conservation Law Found. v. Mosbacher, 966 F.2d 39, 41 (1st Cir.1992) (“no bright line of demarcation exists”). Some courts treat the “interest” test as a pragmatic process that qualifies as many concerned parties as is compatible with efficiency. Others reject interests that are “speculative.” Often the determination of whether an interest is significantly protectable is “colored to some extent” by the “practical impairment” inquiry. Conservation Law Found., 966 F.2d at 41-42.
The nebulous nature of the standard is apparent from our precedents. Old Colony Trust Co. v. Penrose Industries Corp., 387 F.2d 939, 941 (3d Cir.1968), held that in a declaratory judgment action over the com-merciaf reasonableness of the sale price of collateral, a “would-be purchaser” did not have an adequate interest for intervention. On the other hand, in EEOC v. AT & T, 506 F.2d 735, 741-42 (3d Cir.1974), a union was permitted to intervene to contest a proposed consent decree between the government and an employer that could have affected the terms of a collective bargaining agreement.
In Harris, the court denied intervention to a district attorney in a suit brought to alleviate overcrowding and other conditions in the local penal institution. We observed that the district attorney did not administer the pris *970 on and that a consent decree placing a ceiling on the prison population would only tangentially affect his ability to prosecute. 820 F.2d at 599-603. By contrast, Alcan Aluminum held that an adequate interest for intervention had been established where a right of contribution for expenses incurred in cleaning up a hazardous waste site could have been jeopardized by a proposed consent decree. 25 F.3d at 1183-86.
Brody involved a suit to enjoin religious speech. A group of students and parents sought to intervene in opposition to plaintiffs. We concluded that the proposed intervenors had no interest in litigating the merits of the school’s policies, but to the extent a remedy fashioned in a decree might infringe on their First Amendment rights, the parents and students could be eligible for participation in the suit. 957 F.2d at 1116-17. We also commented on “our policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks.” Id. at 1123.
In Alpha Housing, the sole member of a nonprofit corporation sought to intervene to protect the continued viability and tax exempt status of the corporation. We accepted the plaintiffs’ concession that these interests were significant enough to support intervention. 54 F.3d at 162. Finally, in Mountain Top Condominium, we concluded that the intervenors’ interest in the disposition of a specific fund was sufficient to justify intervention even though they could not challenge the merits of another party’s claim to the fund. 72 F.3d at 367-68.
This brief review of our jurisprudence does not yield a pattern that will easily support or defeat intervention in all circumstances. Rather, the variety of factual situations and their resolution demonstrate our adherence to the elasticity that Rule 24 contemplates when compared to the rigidity of earlier practice. See Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 133-34, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967).
A leading treatise explains that pragmatism is a substantial factor that must be considered: “The central purpose of the 1966 amendment was to allow intervention by those who might be practically disadvantaged by the disposition of the action and to repudiate the view, [under the former rule], that intervention must be limited to those who would be legally bound as a matter of res judicata.” 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1908, at 301 (1986).
Phraseology such as “mere economic interests,” for example, has been used but has not proved decisive in practice,[1] nor have concepts such as “mere expectancies” or “indefiniteness” been particularly helpful in identifying the nature of the interest required. We have more often relied on pragmatic considerations such as the benefits derived from consolidation of disputes into one proceeding. Those considerations, however, should not prevail if the focus of the litigation would be unduly dissipated or case management would become exceptionally complex.
Our survey of the law in other Circuits, particularly as applied in environmental litigation, provides some helpful background. In Sierra Club v. Espy, 18 F.3d 1202 (5th Cir.1994), the case upon which the district court principally relied, plaintiffs challenged certain management practices of the Service in Texas forests. The Court of Appeals for the Fifth Circuit concluded that two trade groups whose members included the “major purchasers and processors” of timber had an interest sufficient to satisfy Rule 24(a). Id. at 1207. In that case, some member companies had interests in existing timber contracts. Id.
*971 In Sierra Club v. Glickman, 82 F.3d 106 (5th Cir.1996) (per curiam), a trade association representing farmers sought intervention in a suit to cut off federal subsidies to those who pumped water from an aquifer. Plaintiffs contended that over-pumping threatened endangered species and public health. The court concluded that the suit “potentially” interfered with the intervenors’ contract rights by disrupting their access to irrigation water. Id. at 109.
Similarly, intervention was permitted by the Court of Appeals for the First Circuit in Conservation Law Foundation, where plaintiffs and a government agency agreed on a consent decree that set timetables for the establishment of a government plan that would impair the business of commercial fisheries. As targets of a regulatory plan ultimately aimed at reducing over-fishing, the commercial fisheries alleged an interest that supported intervention. 966 F.2d at 43-44.
Some decisions, however, adopt a more mechanical approach when evaluating the relevant interests. In Portland Audubon Society v. Hodel, 866 F.2d 302 (9th Cir.1989), for example, the Court of Appeals for the Ninth Circuit held that an economic interest in protecting a continuous supply of timber was insufficient to warrant intervention in a NEPA case by a trade group and various timber companies. Following Wade v. Goldschmidt, 673 F.2d 182 (7th Cir.1982) (per curiam), Portland Audubon held that in a suit to compel' an agency to follow NEPA, only governmental bodies may be defendants. Id. at 309; see also Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1499 n. 11 (9th Cir.1995) (citing Sierra Club v. EPA, 995 F.2d 1478, 1485 (9th Cir.1993)); cf. Collin County v. Homeowners Assoc. for Values Essential to Neighborhoods (HAVEN), 915 F.2d 167, 170-72 (5th Cir.1990) (plaintiffs lacked standing to sue for a judgment declaring governmental compliance with NEPA). But cf. Mountain States Legal Found. v. Glickman, 92 F.3d 1228, 1232-33, 1236 (D.C.Cir.1996) (lumber company has standing to sue the Service under the National Forest Management Act and challenge its decision to limit timber harvesting).
These cases seem to suggest that NEPA suits are sui generis because “only the government” can comply with that statute. We . are reluctant to endorse a- narrow approach that makes the onus of compliance the litmus test for intervention. Such a wooden standard minimizes the flexibility and spirit of Rule 24 as interpreted in Cascade Natural Gas. See Espy, 18 F.3d at 1207 (permitting timber industry organization to intervene as a defendant in a NEPA case against the Service).
The reality is that NEPA cases frequently pit private, state, and federal interests against each other. Rigid rules in such cases contravene a major premise of intervention— the protection of third parties affected by pending litigation. Evenhandedness is of paramount importance. See Note, Sierra Club v. U.S. Environmental Protection Agency: Intervention of Right and the Victories that Come Back to Haunt, 7 Tul. Envtl. L.J. 271, 283 (1993).
The expansion of standing by statute and case law has enabled “private attorneys general” and “public interest” groups to call governmental agencies to task in litigation. These efforts, though often well-intentioned, sometimes concentrate on narrow issues that are of significant concern to plaintiffs but have an immediate and deleterious effect on other individuals and entities. Rather than barring access to these parties, Rule 24 allows the court to give them the opportunity to present their positions.
Thus, we are reluctant to accept the holdings of the Court of Appeals for the Ninth Circuit in Portland Audubon and Sierra Club v. EPA that, in reliance on Wade, seem to adopt a categorical rule in NEPA cases barring private support for governmental agencies. Wade did not espouse such a rigid position. In that case, the Court denied intervention to various municipalities and private parties that would have benefitted from a highway project because their interests were not directly implicated by the lawsuit. The Court cautioned, however, that a different case would be presented if the suit would “directly alter contractual or other legally protectable rights of the proposed interve-nors.” 673 F.2d at 186 n. 6.
The Ninth Circuit inched away from the doctrinaire approach in Forest Conservation *972 Council by allowing nonfederal parties to intervene in a NEPA case, but limited their participation to the remedy phase. 66 F.3d at 1499 & n. 11. Some of our cases, particularly Harris and Brody, have endorsed a bifurcated approach in some circumstances. We explored the viability of that form of relief with counsel at oral argument, but neither they nor we have been able to arrive at a pragmatic application of that option here without unduly attenuating the applicants’ interests.
The convergence of conservation and timber interests that has occurred in this case confirms that the categorical approach can be too inflexible. Protecting timber interests has been an express Congressional policy since the establishment of the national forest system through the Organic Administration Act of 1897. 16 U.S.C. § 475. That policy was affirmed in the Multiple-Use Sustained-Yield Act of 1960, 16 U.S.C. §§ 528-81, and reaffirmed in the National Forest Management Act of 1976. 16 U.S.C. § 1604. The National Forest Management Act also blends logging and environmental interests by requiring land management plans to be drafted “under the principles of the Multiple-Use Sustained-Yield Act” and “in accordance with” NEPA. 16 U.S.C. § 1604(g)(1).
Under these circumstances, we think that the decision of the Court of Appeals for the Fifth Circuit in Sierra Club v. Espy represents a more realistic approach in permitting intervention. Timber companies have direct and substantial interests in a lawsuit aimed at halting logging or, at a minimum, reducing the efficiency of their method of timber-cutting
Adequacy of interest alone, however, is not enough to grant intervention. Because Rule 24(a) envisions a separate inquiry into whether the government or other existing parties will adequately advocate the applicant’s interest, courts must be careful not to blur the interest and representation factors together. See e.g., Solid Waste Agency v. United States Army Corps of Engineers, 101 F.3d 503, 508 (7th Cir.1996) (in suit to compel issuance of a permit to allow establishment of a landfill, adjacent municipality and citizens group could intervene to defend the Corps’ denial; “stumbling block” would be “proving inadequacy of representation” by the government).
The burden of establishing inadequacy of representation by existing parties varies with each case. A government entity charged by law with representing a national policy is presumed adequate for the task, Brody, 957 F.2d at 1123, particularly when the concerns of the proposed intervenor, e.g., a “public interest” group, closely parallel those of the public agency. In that circumstance, the “would-be intervenor [must make] a strong showing of inadequate representation.” Mausolf, 85 F.3d at 1303. But the presumption notwithstanding, when an agency’s views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light. Conservation Law Found., 966 F.2d at 44; accord Mausolf, 85 F.3d at 1303 (“when the proposed interve-nors’ concern is not a matter of ‘sovereign interest,’ there is no reason to think the government will represent it”); see also Solid Waste Agency, 101 F.3d at 508-09 (raising concerns that workload of Solicitor General’s Office could prevent an agency’s appeal and thus adversely affect proposed intervenors).
This overview demonstrates that Rule 24 demands flexibility when dealing with the myriad situations in which claims for intervention arise. Nonetheless, the polestar for evaluating a - claim for intervention is always whether the proposed intervenor’s interest is direct or remote. Due regard for efficient conduct of the litigation requires that intervenors should have an interest that is specific to them, is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought. The interest may not be remote or attenuated. The facts assume overwhelming importance in each decision.
Counseled by these appellate opinions, we assess the case before us. The relief sought by plaintiffs, i.e., an injunction to bar logging (at least until such time as the NEPA process is completed) would have an immediate, adverse financial effect on the school districts and municipalities. That re- *973 suit is not speculative, intangible or unmeasurable, especially when, as other courts have observed, NEPA compliance actions can take years. See, e.g., Forest Conservation Council; 66 F.3d at 1498.
The school districts and municipalities have direct interests in this litigation because state law commands the Commonwealth, through its political subdivisions, to forward to them federal grant money generated through timber harvesting each year, money that they will lose, at least temporarily and perhaps permanently, if plaintiffs are successful in this lawsuit. To suspend the flow of revenue to the school districts and municipalities for even a limited period of time would affect spending for essential school activities and public projects. We are persuaded that the interests jeopardized, which are protected by state law, are direct, substantial and of adequate public interest as to justify intervention. In these sparsely populated areas with limited tax bases, the impairment caused by curtailing revenue provided through logging activity would be significant.
Turning to the private-party applicants, the district court cited Sierra Club v. Espy for the proposition that only those timber companies with existing contracts had an interest that would support intervention. From our point of view, Sierra Club v. Espy states a rule of inclusion for evaluating interests under Rule 24(a)(2), but should not be read to exclude similar, contract-related interests of the type implicated here.
Ridgway Lumber had more than a mere expectancy of obtaining a contract in the future. It was already a successful bidder, and from all that appears in the record, would now be a party to a remunerative contract for logging but for the institution of this litigation. Realistically, Ridgway has as strong an economic stake in the outcome of this litigation as do Spilka and Payne, which were permitted to intervene.
Brookville Wood Products and Northeast Hardwoods may not have received contracts under the projects challenged by plaintiffs, but the district court found that they are “very dependent on timber contracts with the [Service] to cut timber” in the Forest and “their continued existence may be jeopardized” if plaintiffs prevail. Dist. Ct. Op. at 5. In addition, like the other timber companies, they have a considerable stake in ensuring that the landscape corridor approach to forest management remains in place. Congress has designated our national forests for multiple uses, but it has also emphasized that those uses are “not in derogation of’ timber harvesting. 16 U.S.C. § 528. This statement of policy, when viewed in light of the district court’s finding that a victory for plaintiffs could destroy their business, satisfies us that Brookville. and Northeast Hardwoods have a substantial interest, directly related to and threatened by this litigation, that meets the requirements of Rule 24(a).
Allegheny Hardwood falls within the category of those trade associations representing threatened businesses granted intervention in such cases as Sierra Club v. Glickman, 82 F.3d at 108, Sierra Club v. Espy, 18 F.3d at 1203, and Conservation Law Foundation, 966 F.2d at 40. We find the rulings in those cases persuasive and applicable to Allegheny Hardwood.
Therefore, we conclude that the interests of the private-party applicants are direct, not remote. In other words, they have more than mere attenuated economic interests because, as we have outlined,' their longstanding dependence on contractual relations with the Service is unique to them.
Although plaintiffs assert that the proposed intervenors’ interests are adequately protected by the government defendant, the district court found otherwise with respect to Payne and Spilka. The court pointed out that in a companion case, Curry v. United States Forest Service, 988 F.Supp. 541 (W.D.Pa.1997), the agency chose not to appeal an adverse ruling in connection with timber sales in other projects in the Allegheny National Forest. Consequently, that litigation gave legitimate pause to the lumber companies’ confidence in adequate representation by the Service.
In addition, the government represents numerous complex and conflicting interests in matters of this nature. The straightforward business interests asserted by intervenors *974 here may become lost in the thicket of sometimes inconsistent governmental policies. See Sierra Club v. Glickman, 82 F.3d at 110; Forest Conservation Council, 66 F.3d at 1499; Sierra Club v. Espy, 18 F.3d at 1207-08; Conservation Law Found., 966 F.2d at 44-45. Although it is unlikely that the inter-venors’ economic interest will change, it is not realistic to assume that the agency’s programs will remain static or unaffected by unanticipated policy shifts.
Plaintiffs contend that whatever the doubts about the vigor of the government’s representation, Payne and Spilka’s interests are aligned with those of the proposed inter-venors. We disagree. It does not strain the imagination to conjure up situations in which Payne and Spilka may face the irresistible temptation to work out settlements that benefit themselves and not the other, competing timber companies. Compromises of that nature might also harm the school districts and municipalities, which have interests inextricably intertwined with, but distinct from, those of the timber companies. See Lake Investors Dev. Group, Inc. v. Egidi Dev. Group, 716 F.2d 1256, 1261 (7th Cir.1983).
In Solid Waste Agency, the Court of Appeals for the Seventh Circuit discussed the value of a “wait and see” approach in which proposed intervenors would file a conditional application with the understanding that the district court would defer consideration until requested to do so. 101 F.3d at 508-09. Such a procedure may work in some eases, but on balance, intervenors and the public interest in efficient handling of litigation are better served by prompt action on a intervention motion. See Conservation Law Found., 966 F.2d at 44 (“An intervenor need only show that representation may be inadequate, not that it is inadequate.”). The early presence of intervenors may serve to prevent errors from creeping into the proceedings, clarify some issues, and perhaps contribute to an amicable settlement. Postponing intervention in the name of efficiency until after the original parties have forged an agreement or have litigated some issues may, in fact, encourage collateral attack and foster inefficiency. In other words, the game may already be lost by the time the intervenors get to bat in the late innings.
III.
We conclude that in the circumstances of this case, the motion for leave to intervene should have been granted. Each applicant has a significantly protectable interest in the transaction that may be jeopardized by the lawsuit. None of the existing parties will adequately represent their interests. Although there are a number of interve-nors, we are confident that the very able district judge will effectively handle any ease-management problems that may arise. Accordingly, we will reverse the order denying intervention and remand the case to the district court for further proceedings consistent with this Opinion.[2]

. That phrase and others like it were mentioned in Mountain Top Condominium, 72 F.3d at 366, and Alcan Aluminum, 25 F.3d at 1185. The concept was explored in New Orleans Public Service, Inc. v. United Gas Pipe Line Co., 732 F.2d 452, 464-66, 470 (5th Cir.1984) (en banc). The issue in NOPSI was the remoteness of the interest of the city as a regulatory agency in a breach of contract suit brought by a public utility against one of its gas suppliers. It was not the fact that the city’s interest was financial in nature that disqualified it, but rather, because its interest was too attenuated from that of the utility. Id. The city failed to show that it possessed any interest recognized by substantive law.

. In light of our holding that the applicants ' should have been granted leave to intervene as of right under Rule 24(a), we need not decide whether the district court should have granted permissive intervention under Rule 24(b).